**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAVANNA SPENCER,** | : | |
| | : | **Civil Action No. 3:07-CV-1021** |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **JEFFREY BEARD, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM**

## I.   INTRODUCTION

Plaintiff Ravanna Spencer, an inmate within the custody of the

Pennsylvania Department of Corrections, brought this lawsuit against a number of

corrections officials, alleging that these officials subjected him to unlawful

excessive force during a cell extraction on May 13, 2006, and thereafter placed

him in a prison cell without clothing, food, water, or adequate heat for an extended

period of time.  Plaintiff's claims alleging that the officers used excessive force

were bifurcated from his claims regarding the allegedly unlawful conditions of his

confinement, and tried before a jury on May 17 and 18, 2010.[1]  A jury returned a

---

[1] As will be discussed, Plaintiff's claims regarding the conditions of his
confinement were bifurcated because, until the eve of trial, neither party had
focused on these claims in any way, and Defendants had understood that Plaintiff
was proceeding only on his claims regarding excessive force.  Indeed, apparently
for this reason, the corrections defendants had taken no discovery regarding

verdict favor of the corrections defendants on Plaintiff's Eighth Amendment excessive force claims.

Following this trial, the parties engaged in further discovery regarding Mr. Spencer's claims that the conditions of his confinement following his cell extraction in May 2006 violated his right to be free from cruel and unusual punishment in violation of the Eighth Amendment.  At the conclusion of this discovery period, Defendants moved for summary judgment on Plaintiff's remaining claims, arguing that Plaintiff failed to exhaust his administrative remedies with respect to these claims prior to bringing this lawsuit, and that such claims are now barred from being tried in federal court.  (Doc. 224.)  Additionally, Defendants maintain that Plaintiff's allegations are literally incredible, and that the evidence he relies on in support of his claims – namely, his own self-serving testimony – should not be found sufficient to create a dispute of material fact regarding Plaintiff's claims that he was literally kept without food or water for a week or more, or left unclothed in a prison cell below freezing temperatures for weeks, because Plaintiff's claims are defied by the laws of science.

---

Spencer's claims regarding the condition of his confinement, and thus it was determined that the fairest way of proceeding was to bifurcate Spencer's claims for excessive force from his claims regarding the conditions of his confinement following the March 13, 2006 cell extraction.  Spencer, who at the time was represented by pro bono counsel, concurred with this process.

Upon review, we agree with Defendants that Plaintiff failed to exhaust his administrative remedies with respect to his claim regarding the conditions of his confinement, and that summary judgment is, therefore, warranted.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In May 2006, Plaintiff Ravenna Spencer was housed in the Special Management Unit (SMU) at the State Correctional Institution at Camp Hill (SCI-Camp Hill), where he was serving a prison sentence following a conviction for robbery.  The record shows that during this time, Spencer had persistently violated a number of prison disciplinary rules, including repeatedly covering the window to his cell door, refusing to comply with various demands and requests of corrections officials, and smearing his own excrement throughout his cell.

Thus, on May 2, 2006, all items were removed from Spencer's cell in the SMU because he had covered his cell door and smeared his feces all over his cell. (Doc. 226, Ex. A, Level 5 Adjustment Record at 3.)[2]  Only two days later, Spencer again covered his cell door and refused orders to remove the items.  (Id.)  As a result, corrections officials physically removed Spencer from his cell and placed

---

[2] Spencer's Level 5 Adjustment Report was introduced at trial as Defendants' Trial Exhibit 7, and was authenticated by stipulation at Doc. 179, ¶ 1.

him cell C1-02.  (Id.)  Two days later, Spencer once again smeared his own waste

on the walls of his cell.  (Id.)

One week later, on May 13, 2006, Spencer had once again covered the

window to his cell and refused orders to remove the items.  (Doc. 226, Ex. B,

Extraordinary Occurrence Report at 2.)[3]  As a result, corrections officials were

compelled again to physically extract Spencer from cell C1-02 and move him to

cell C1-01.  (Id.)  Shortly after midnight on the next morning, in another example

of this persistent refusal to comply with prison rules orders from corrections

officers, Spencer once again covered the window to his cell door with toilet paper

and refused orders to remove it.  (Doc. 226, Ex. C, May 14, 2006 Extraordinary

Incident Report at 2.)[4]  Accordingly, at 12:14 a.m. on May 14, 2006, Spencer was

once again physically removed from his cell and placed in cell C1-13.  (Id.)

On June 6, 2006, Spencer utilized the grievance procedure made available

to inmates by filing Grievance Number 154613, which concerned his May 13,

2006, cell extraction.  (Doc. 226, Ex. H, Declaration of Dorina Varner, Attach. B.)

_____

[3]  The May 13, 2006 Extraordinary Occurrence Report was introduced
during Spencer's first trial in this action as Trial Exhibit 14, and was authenticated
by stipulation at Doc. 179, ¶ 1.)

[4]  The May 14, 2006 Extraordinary Occurrence Report was included at the
first trial in this case as Defendants' Trial Exhibit 23 and was authenticated by
stipulation at Doc. 179, ¶ 1.)

In this grievance, Spencer claimed:

> On 5-13-06 Officers Barnes, Anderson, Dixon, Warner, Beaver, and maybe one other officer extracted my cell I was house in G-C1-02.  Officers came in there was a little struggle and then I was handcuffed and escorted to G-C1-1 where I was laid on a cold metal frame all my clothes were cut off and while I was on the cold frame officer punched me perfusely [sic] in the face and head which left a large lump on my head and scars on my scalp and caused my face and head to hurt severely I was then yanked by the tether through the [illegible].  Note Sgt. Maxwell and Lt. Proce was the leader of this extraction thus all on camera Nurse Misty was there she refused to give me medical attention I believe they told her not to because she [illegible] I couldn't fill paper work in a stripped cell.

(Id.) Ian W. Taggart, the Corrections Superintendent Assistant at SCI-Camp Hill responded to this grievance on June 9, 2006, indicating that Spencer's allegations regarding "alleged excessive force at the hands of the SMU Officers has been forwarded to the Security Office for their investigation."  (Id.)

Following an investigation into Spencer's claims, the Security Office responded to Spencer, informing him that the investigation had revealed "no credible evidence that would support your claims."  (Id.)  To the contrary, the investigation found "that it was [Spencer] was combative with staff and would not cooperate with the cell extraction process."  (Id.)  The Security Office observed that Spencer had been "involved in multiple use of force incidents with staff since

[his] reception into the SMU and [his] continued negative interaction and

disruptive behavior with staff has necessitated these use of force incidents . . . ."

(Id.)  As a result of these findings, the Security Officer considered the grievance

resolved, but noted that the investigation would be reviewed by the Department of

Corrections' Office of Professional Responsibility and other administrative staff in

accordance with the Department's Abuse Allegation Monitoring Process.  (Id.)

 Spencer appealed the denial of his grievance to Donald L. Kelchner, the

Superintendent at SCI-Camp Hill, who concurred in the Security Office's

investigation and conclusion, "which was conducted concerning [Spencer's]

allegations of abuse at the hands of SMU staff members."  (Id.)  Spencer thereafter

appealed this denial to the Secretary's Office of Inmate Grievances and Appeals

("SOIGA").  On January 18, 2007, Sharon M. Burks, at that time the Chief

Grievance Officer at SOIGA, issued a letter to Spencer in which she represented

that she had reviewed the entire grievance record, and upheld the responses that

staff had provided at the institutional level denying Spencer's grievances and

finding his claims unsupported.  (Id., Attach. C.)

 On June 5, 2007, Spencer initiated the instant lawsuit by filing a complaint.

(Doc. 1.)  Although the complaint is far from detailed, in it Plaintiff alleged that

corrections officers abused him during his cell extraction and left him naked "and

without anything in a stripped cell." (Id. ¶ 18.) Nowhere in the initial complaint did Plaintiff allege that he was deprived of food or water, or that he was left in a cell that was unreasonably or dangerously cold.

Three months later, Spencer filed an amended complaint. (Doc. 15.) In this amended complaint, Spencer for the first time alleged that he was deprived on clothing and was left for "several days approximately about 15 days naked in a very cold cell." (Id. ¶ 19.) In the amended complaint, Spencer does not allege that he was deprived of food or water after being placed in a new cell following his cell extraction on May 14, 2006.

On December 19, 2008, Plaintiff was granted leave to file a second amended complaint. (Doc. 81.) In this document, Plaintiff for the first time expands upon his earlier claims, and adds new claims that were never included in Grievance Number 154613 or any appeal from a decision denying that grievance. Thus, at paragraph 10 of the second amended complaint, Plaintiff avers that he was left naked in a cell without "water, socks, t-shirts, shoes, mattress, cleaning supplies, rages, soap, exercise, shower, law library or any personal property this went on from 5-13-06 to 5-29-06 the cell was completely stripped and I was extremely cold. In addition I was placed on an undue food restriction from the same incident explained above." (Id. ¶ 10.) Also in the second amended

7

complaint, Plaintiff stated that he had "exhausted his remedies on these claims in

Grievance # 154613 . . . ." (Id. ¶ 12.)

On December 12, 2010, the Court entered a revised case management order

to provide for discovery and other pre-trial deadlines applicable to Plaintiff's

claim regarding the conditions of his confinement following his May 13, 2006,

cell extraction, which had been bifurcated from Plaintiff's claims alleging that he

was subjected to excessive force during the cell extraction.  (Doc. 223.)  In

accordance with the new case management deadlines established in this order,

Defendants filed a timely motion for summary judgment on Plaintiff's remaining

claims on January 10, 2011, (Doc. 224), together with a statement of undisputed

facts (Doc. 225), exhibits thereto (Doc. 226), and a supporting brief (Doc. 227).

After being granted an extension of time until February 14, 2011, to file a brief in

opposition to the motion (Doc. 230), Plaintiff filed an opposition brief on February

18, 2011, together with a counterstatement of material facts pursuant to Local Rule

56.1.  (Docs. 232, 233.)  Defendants filed a reply brief in further support of their

motion on March 4, 2011.

Defendants' motion for summary judgment is now ripe for disposition.  For

the reasons that follow, we find that the motion must be granted because Plaintiff

did not exhaust the administrative remedies available to him with respect to his

evolving claim regarding the conditions of his confinement that followed his cell

extraction.  Simply put, we find that nothing in Plaintiff's grievances and appeals

that would have alerted corrections officials that Spencer was making any

complaint relating to being deprived of food, water, or clothing, or any of life's

necessities subsequent to his cell extraction on May 14, 2006.  Because settled law

makes clear that an inmate must exhaust administrative remedies relating to his

claims before bringing them in federal court, and that all such claims must be

fairly presented to corrections officials as part of this administrative process as a

prerequisite to filing a lawsuit, Spencer is now precluded from prosecuting claims

that he never sufficiently identified to prison officials.  In this case, we find that

Spencer clearly did not exhaust his claims regarding the alleged conditions of his

confinement, and these claims are consequently barred.

III.    **STANDARD OF REVIEW**

Federal courts are permitted to summarily adjudicate an action in order to

dispose of those claims that do not present a "genuine issue as to any material

fact," Fed. R. Civ. P. 56, and for which a jury trial would, therefore, "be an empty

and unnecessary formality," Peynado v. Sabol, No. 09-355, 2010 U.S. Dist. LEXIS

134131, 2010 WL 5300563, at *2 (M.D. Pa. Dec. 20, 2010).  Rule 56 specifically

provides that "[t]he judgment sought should be rendered if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden at trial," summary judgment is appropriate. <u>Celotex</u>, 477 U.S. at

322. Summary judgment is also appropriate if the non-moving party provides

merely colorable, conclusory, or speculative evidence. <u>Anderson</u>, 477 U.S. at 249.

There must be more than a scintilla of evidence supporting the nonmoving party

and more than some metaphysical doubt as to the material facts. <u>Id.</u> at 252; <u>see</u>

<u>also</u>, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

In making this determination, the Court must "consider all evidence in the light

most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub. Schs.</u>,

486 F.3d 791, 794 (3d Cir. 2007).

## IV.   <u>DISCUSSION</u>

### A.   **Plaintiff's Eighth Amendment Claims Relating to the Conditions of His Confinement Are Barred Due to His Failure to Exhaust Administrative Remedies Relating to These Claims.**

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides

that "[n]o action shall be brought with respect to prison conditions under . . . [42

U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison,

or other correctional facility until such administrative remedies as are available are

exhausted." <u>See also</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002) ("[T]he PLRA's

exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong.").  Under § 1997e(a), "an inmate must

exhaust [administrative remedies] irrespective of the form of relief sought and

offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6

(2001).  Additionally, exhaustion under the PLRA mean proper exhaustion,

meaning that "a prisoner must complete the administrative review process in

accordance with the applicable procedural rules, including deadlines, as a

precondition to bringing suit in federal court." Woodford v. Ngo, 548 U.S. 81, 88

(2006).

      ""[P]rison grievance procedures supply the yardstick  for determining what

steps are required for exhaustion." Williams v. Beard, 482 F.3d 637, 639 (3d Cir.

2007) (quoting Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004)).  Thus, in order

to satisfy the PLRA's exhaustion requirements, a prisoner must complete the

administrative review process in accordance with applicable rules and procedures.

Id.; Spruill, 372 F.3d at 228, 231 (3d Cir. 2004).  "Perfect overlap between the

grievance and a complaint is not required by the PLRA as long as there is a shared

factual basis between the two." Johnson v. Danberg, No. 07-394, 2011 U.S. Dist.

LEXIS 19762, *7 (D. Del. Feb. 11, 2011).  However, the Supreme Court has made

clear that prison officials must be given adequate notice of an inmate's claims,

because "[t]he benefits of exhaustion can be realized only if the prison grievance

system is given a fair opportunity to consider the grievance." Woodford, 548 U.S. at 95.

While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ...

Nyhuis v. Reno, 204 F.3d 65, 75 -76 (3d Cir. 2000)(citations omitted)

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id.  Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component

13

on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

The administrative procedure that inmates must use to prosecute grievances is provided for in Department of Corrections Administrative Directive 804 ("DC-ADM 804"). (Doc. 226, Ex. H, Declaration of Dorina Varner, Attach. A.) The grievance system is comprised of three tiers. (Id.) Pursuant to DC-ADM 804, an inmate's grievance must include a legible and understandable statement of facts relevant to the claim, and must identify anyone who may have information that could be helpful in resolving the grievance. (Doc. 228, Ex. H, Varner Decl. ¶ 4; Attach A.)

Following submission of a grievance, the first step in the inmate grievance process, except for those expressly governed by other procedures, is an initial review. (Doc. 228, Ex. H, Varner Decl., Attach A.) At this stage, an inmate must

14

submit a grievance within 15 working days of the event on which the grievance is based. (Id.)  An inmate who is dissatisfied with the initial decision may appeal to the Facility Manager within 10 working days from the date of the initial review decision. (Id.)  At a state correctional institution, the Facility Manager is the institution's Superintendent. (Id.)  If an inmate is not satisfied with the result of the Facility Manager's review of his appeal, he may appeal to final review with SOIGA by filing an appeal with that office within 15 working days of the date of the Facility Manager's decision. (Id.)

When viewed against the requirements set forth in the DC-ADM 804 procedures, and the case law interpreting the PLRA, it is clear that Spencer did not properly grieve the claims he now raises in this litigation relating to the allegedly unlawful conditions of his confinement following his cell extraction on May 13, 2006, and hours later on May 14, 2006.  Although Spencer attempts to claim that he did, in fact, grieve the conditions of his confinement, a review of Grievance Number 154613 – the only grievance that Spencer fully exhausted following this incident – shows otherwise.  Other than an oblique reference to the fact that he was placed in a "stripped cell" following his cell extraction, Spencer makes no discernible claim that could have put prison officials on notice that he was advancing a claim about the conditions of his confinement, including his lack of

15

clothing, food, water, or adequate heat in his cell.  Later, in his appeal to final review, Spencer made another ambiguous reference to being in a stripped cell, but did not address any of the claims relating to the allegedly unlawful conditions of his confinement that he now attempts to prosecute.

Although we recognize that there does not need to be perfect overlap between an inmate's grievances and his subsequent lawsuit, the grievance that the inmate brought must be sufficient to give prison officials fair notice of the alleged problem, and a fair opportunity to address it.  Spencer's passing reference to being placed in a stripped cell do not come close to giving prison officials fair notice that Spencer was complaining about the conditions of his confinement, and his grievance does not include any complaint about the conditions, restrictions, or length of time that he was confined in such a cell.  Indeed, we find that Grievance Number 154613 can only reasonably be read to relate to Spencer's claims regarding the cell extraction process itself and the officers' alleged use of excessive force  – and these claims have already been litigated to a jury verdict in Defendants' favor.[5]  Since Spencer claimed that he exhausted the claims in this

---

[5] Indeed, it appears that every corrections official who reviewed Grievance Number 154613 concluded that it concerned claims of excessive force, and did not relate to claims regarding the conditions of confinement.  Notably, Spencer never attempted to correct prison officials' interpretation regarding the scope of his grievance during his subsequent appeals.

litigation through Grievance Number 154613, we are left to conclude that the only

claims Spencer properly exhausted in accordance with the PLRA are those claims

relating to the extraction itself, and not to the claims that remain concerning the

conditions of his confinement.

In his brief opposing summary judgment, Spencer argues, alternatively, that

he actually attempted to exhaust his claims relating to the conditions of his

confinement in Grievance Number 153919, which he filed on June 1, 2006.  This

grievance does address Spencer's claims that he was subject to starvation while

confined in his cell after the May 13, 2006 extraction.  (Doc. 233, Ex. A-6.)  This

grievance was answered on June 20, 2006.  (Id.)  Spencer appealed the Grievance

Officer's response on June 26, 2006.  (Id.)  However, before the Superintendent

had a chance to respond, Spencer filed a request with his counselor to ask that

Grievance Number 153919 be returned to him so that he could correct some

unspecified mistake.[6]  (Id.)  In response, Spencer's counselor referred him to the

grievance procedures laid out in DC-ADM 804, and suggested that any appeal

would be untimely under the grievance rules.  (Id.)  On July 21, 2006,

---

[6] Although the date on this request is stated as "3-30-06," it is not possible
that Spencer wrote the request on this date, since it refers to a grievance that was
not filed until June 1, 2006.  It appears clear that Spencer made this request at
some point before June 30, 2006, and made a mistake as to the date.  The request
was marked received on July 7, 2006.  (Id.)

17

Superintendent Kelchner denied Spencer's appeal of Grievance Number 153919. Spencer never appealed this denial to final review with the Central Office.  (Doc. 228, Ex. H, Varner Decl. at ¶¶ 13-14, Attach. D.)  In short, Spencer never exhausted Grievance Number 153919.  Accordingly, pursuant to the PLRA, Spencer is now precluded from bringing the claims contained in that grievance in federal court.

Upon review of the grievances and appeals submitted by the parties in this case, we can conclude only that Spencer failed to exhaust the claims relating to his confinement that he now seeks to prosecute in this case.  Although Spencer did exhaust the claims he has already litigated, unsuccessfully, relating to his excessive force allegations, we simply cannot find that the bare references to being in a "strip cell" offered prison officials the kind of fair opportunity to address prisoner complaints that the PLRA requires they be given regarding Spencer's conditions-of-confinement claims. In fact, Spencer's subsequent efforts to file a second grievance, Grievance Number 153919, demonstrates that Spencer himself recognized that these claims were not encompassed in his first grievance.  Because Plaintiff did not properly exhaust his claims relating to the conditions of his confinement following his multiple cell extractions on May 13 and May 14, 2006, we conclude that he is now barred from bringing these claims as part of this

litigation, and summary judgment in Defendants' favor is therefore warranted.[7]

An appropriate order follows.

---

[7] Because Plaintiff's did not exhaust his claims relating to the condition of his confinement, we find it unnecessary to consider Defendants' additional arguments that Plaintiff's claims regarding his confinement are, in many instances, impossible and, therefore, not worthy of trial. For example, at times during this litigation, Plaintiff has made sworn statements suggesting that he went without food or water for a week or more following his cell extraction. Defendants have offered testimony from a medical doctor in an effort to establish that Plaintiff's claims in this regard fly in the face of medical reality, and that Spencer would have perished if he had been kept without water for this period of time. Similarly, in an effort to provide details regarding his claims that his cell was unreasonably cold, Plaintiff has suggested that he was left in a prison cell below freezing temperatures for weeks. To refute these claims, Defendants have offered evidence to show that the heating system in place at SCI-Camp Hill is kept between 70 and 75 degrees Fahrenheit in May, and that it is not possible for temperatures to fall below 60 degrees Fahrenheit during that time. Although we agree that the evidence Defendants have offered cast grave doubt on the accuracy or veracity of Plaintiff's claims, we need not attempt to determine whether an issue of fact remains on these claims because they are unexhausted. However, in closing, we note that this case presents a paradigmatic example of the importance of the PLRA's exhaustion requirements: to enable prison officials to address and, if necessary, correct problems within prisons. Had Spencer properly exhausted the claims he now makes in this case, prison officials could have been in a position to address them squarely with him and, if necessary, to explain how some of the claims he has tried to make in this case are simply impossible.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAVANNA SPENCER,** | : | |
| | : | **Civil Action No. 3:07-CV-1021** |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| v. | : | |
| | : | |
| **JEFFREY BEARD, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

AND NOW, this 21st day of March, 2011, upon due consideration, and for

the reasons set forth in the within memorandum, IT IS HEREBY ORDERED

THAT Defendants' motion for summary judgment (Doc. 224) is GRANTED.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge